## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **OSCAR SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00270** |
| | ) | **Judge Aleta A. Trauger** |
| **DR. FENG LI, in his official capacity as** | ) | |
| **the Chief Medical Examiner for the State** | ) | |
| **of Tennessee and Chief Medical** | ) | |
| **Examiner for the Metropolitan** | ) | |
| **Government of Nashville and Davidson** | ) | |
| **County, Tennessee,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Plaintiff Oscar Smith, who is scheduled to be executed by the State of Tennessee by lethal

injection on April 21, 2022, has filed a Motion for Preliminary Injunction (Doc. No. 12), to which

Dr. Feng Li has filed a Response (Doc. No. 16), and Smith has filed a Reply (Doc. No. 18). For

the reasons set out herein, that motion will be granted.

Although Smith has raised other issues in other litigation, this particular case is not about

whether Smith's execution itself will go forward, but rather what should happen after it does. On

April 14, 2022, Smith filed a Complaint for Injunctive Relief, asserting claims under (1) the

Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc *et seq.*, (2)

42 U.S.C. § 1983, for violation of his rights under the First Amendment to the free exercise of

religion, and (3) the Tennessee Religious Freedom Restoration Act ("TRFRA"), Tenn. Code Ann.

§ 4-1-407. The factual basis for Smith's claims is that (1) he has a sincerely held religious belief

that the performance of an autopsy or other invasive procedures on his body after his death would

be a mutilation of his body amounting to a desecration and (2) defendant Dr. Feng Li, Chief Medical Examiner for the Metropolitan Government of Nashville and Davidson County, Tennessee,[1] has refused Smith's request for assurances that he will "not perform an autopsy or other invasive procedures, including forensic, pathological, or other testing or procedure on his body or any part of his body (whether or not considered part of an autopsy or pathological investigation) that involves puncturing, cutting, sampling, or testing the body" (Doc. No. 1 ¶ 11; *see id.* ¶ 14 ("Dr. Li is unwilling to agree not to perform an autopsy or other invasive procedures . . . but instead reserves the right to perform an autopsy or other invasive procedures . . . if Dr. Li deems it necessary after the execution.").)

In Smith's Motion for Preliminary Injunction, he asks the court to preliminarily enjoin Dr. Li, his officers, agents, employees, servants, and all persons in active concert or participation with him from performing an autopsy "or any other invasive procedures on Mr. Smith's body" after his execution. (Doc. No. 12 at 1.) The Motion for Preliminary Injunction is supported by a Memorandum (Doc. No. 13), Oscar Smith's handwritten sworn Declaration (Doc. No. 13-1), the Declaration of Edmund L. Carey, Jr., M.D. (Doc. No. 13-2), and the Verified Complaint and Temporary Restraining Order from the case of *Billy Ray Irick v. Dr. Feng Li*, No. 18-878-IV, filed in the Chancery Court for Davidson County, Tennessee in August 2018 (Doc. Nos. 13-3, 13-4).

Dr. Li has filed an Answer and Amended Answer to the Complaint, a Response in Opposition to the Motion for Preliminary Injunction, the Declaration of Dr. Feng Li, M.D. J.D.

---

[1] The plaintiff alleges that Dr. Li is both the County Medical Examiner and Tennessee's Chief Medical Examiner. (Doc. No. 1 ¶ 4.) Dr. Li attests in his Declaration that he is the County Medical Examiner (Doc. No. 17 ¶ 2), and the Amended Answer denies that he is the Chief Medical Examiner for the State of Tennessee (Doc. No. 15 ¶ 4).

PH.D, and copies of additional orders entered by the Chancery Court in *Irick*. (Doc. Nos. 14, 15, 16, 16-1, 16-2, 17.)

## I. PRELIMINARY INJUNCTION STANDARD

In determining whether to issue a temporary or preliminary injunctive order under Rule 65 of the Federal Rules of Civil Procedure, a district court ordinarily weighs the following factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Wilson v. Williams*, 961 F.3d 829, 836 (6th Cir. 2020); *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015); *see Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply whether the relief sought is a temporary restraining order or a preliminary injunction).

"In constitutional cases, the first factor is typically dispositive." *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021) (citing *Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020) (order) (per curiam). The Sixth Circuit has explained that, "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Id.* (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). Because "no cognizable harm results from stopping unconstitutional conduct, . . . 'it is always in the public interest to prevent violation of a party's constitutional rights.'" *Id.* (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001)). In the context of RLUIPA claims, the Supreme Court has explained that the allocation of the burden of proof under the statute, as discussed further below, also "applies in the preliminary injunction context." *Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022) (citing *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 429–30 (2006)).

## II.    ANALYSIS

Congress enacted RLUIPA to ensure "greater protection for religious exercise than is available under the First Amendment." *Ramirez*, 142 S. Ct. at 1277 (2022) (citing *Holt v. Hobbs*, 574 U.S. 352, 357 (2015)). The statute provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution [including state prisoners], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). The plaintiff bears the initial burden of proving that a prison policy "implicates his religious exercise." *Holt*, 574 U.S., at 360. RLUIPA expressly protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 § 2000cc–5(7)(A). At the same time, the prisoner's "requested accommodation 'must be sincerely based on a religious belief and not some other motivation,'" and the "burden on his religious exercise must also be 'substantial.'" *Ramirez*, 142 S. Ct. at 1277 (quoting *Holt*, 574 U.S. at 360–361). Once a plaintiff makes this showing, "the burden flips and the government must 'demonstrate[] that imposition of the burden on that person' is the least restrictive means of furthering a compelling governmental interest." *Id.* (quoting 42 U.S.C. § 2000cc–1(a)).

The State of Tennessee's Execution Procedures call for an executed prisoner's body to be transferred to the possession of the medical examiner upon the conclusion of the execution. Under Tennessee law, "[a] county medical examiner may perform or order an autopsy on the body of any . . . executed prisoners." Tenn. Code Ann. § 38-7-106(a). If the county medical examiner is absent or fails to order an autopsy, the state's chief medical examiner or district attorney general may do so. *Id.*

Plaintiff Oscar Smith attached an Affidavit to his Complaint, in which he succinctly averred that, "[d]ue to [his] religious convictions, [he] strongly object[ed] to the cutting and desecration of [his] body." (Doc. No. 1-2 at 1.) In support of the Motion for Preliminary Injunction, he provides additional detail and support for his claim in the form of a handwritten Declaration dated April 15, 2022, in which he states under oath:

> 1) I am a lifelong Christian.
>
> 2) When I was growing up, I learned that the body is a temple of God. I learned that in Sunday school, and I believe it to this day.
>
> 3) It has been my belief that it is OK to accept medical treatment to prolong life, but that it is not OK to alter the body in any other way.
>
> 4) For that reason, I've never had a tattoo;
>
> 5) For that reason, I've never used recreational drugs;
>
> 6) For that reason, my funeral plans include instructions that my body not be embalmed.
>
> 7) My religious belief was also informed by my grandmother who chose to forgo treatment rather than have her leg amputated. She taught me that God put us here in the way God wanted us and that we should honor God's creation and plan.

(Doc. No. 13-1.)

Dr. Li states in his Declaration that, in his capacity as County Medical Examiner, he is charged, under Title 38, Chapter 7 of the Tennessee Code, with "investigating and performing the autopsies upon the body of any person [who] dies of unnatural causes within the boundaries of Davidson County, including executed prisoners." (Doc. No. 17 ¶ 4.) By statute, he is authorized to perform or order an autopsy on "the body of any person in a case involving homicide or executed prisoner." (*Id.* (citing Tenn. Code Ann. § 38-7-106(a)).) He states that the execution of a prisoner by the state is a death by an unnatural cause and that, if there were no religious objection in this case, he would perform a full autopsy on the body of Oscar Smith. (*Id.* ¶ 5.) However, due to the

religious objection, he will forego an autopsy, "provided no extraordinary information comes to light during or following the execution." (*Id.* ¶ 6.)

However, in lieu of a full autopsy, Dr. Li intends not only to perform a post-mortem visual examination of Mr. Smith's body following the execution and to take photographs and non-invasive "radiograph examinations," to all of which Smith does not object (Doc. No. 13 at 4), but also to collect "samples of Mr. Smith's blood, urine, and vitreous fluids." (Doc. No. 17 ¶ 7.) To collect these fluids, Dr. Li intends to use a needle and a syringe. He attests that the collection of such fluids with the use of a needle and syringe "is generally considered a non-invasive or minimally invasive procedure that will leave only needle puncture marks on the skin [and] eyes" but that "no cutting of the body is necessary." (*Id.*) This procedure is not considered to constitute an "autopsy" by persons in the medical field. (*Id.* ¶ 8.) Dr. Li says that, in the event "extraordinary information" comes to light during or after the execution that makes it necessary to perform a full autopsy, he would discuss such information with Mr. Smith's counsel. (*Id.* ¶ 9.)

The court finds the plaintiff's detailed Declaration, explaining his beliefs and demonstrating their consistency and duration over time, constitutes ample evidence of the sincerity of his beliefs. In addition, it is clear that subjecting Smith's body to invasive procedures, including the withdrawal of bodily fluids and, potentially, an autopsy, would impose a substantial burden on Smith's exercise of his religion. *See, e.g.*, *Alley v. Levy*, No. 3:06-0645, 2006 WL 1804605, at *2 (M.D. Tenn. June 28, 2006) (noting, under the more stringent First Amendment standard, that requiring the plaintiff-prisoner to undergo a post-execution autopsy was "very likely" to substantially interfere "with a tenet or belief that is central to a religious doctrine" (citations omitted), *vacated sub nom. McIntyre v. Levy*, No. 06-5989, 2007 WL 7007938 (6th Cir. Aug. 1,

2007);[2] *Workman v. Levy*, 136 F. Supp. 2d 899, 900 (M.D. Tenn. 2001) (finding the inmate's declaration established that a post-execution autopsy would violate his sincerely held religious beliefs). It may be that the medical community does not consider the collection of fluid samples to constitute an "autopsy." That fact, though, has no bearing on either the sincerity or the content of Smith's religious beliefs, which do not depend on any such distinction. It is not the place of Dr. Li, the government, or the court to try to convince Smith that he should not consider the postmortem collection of his bodily fluids to be an impermissible intrusion on his religiously mandated bodily integrity. If Smith does sincerely believe that—and the court finds that he does— then Dr. Li's stated intention to violate his beliefs implicates RLUIPA, whether Dr. Li finds Smith's theological explanation persuasive or not.

Because Smith is likely to succeed in showing that Tennessee's practice substantially burdens his exercise of religion, Dr. Li must show that his refusal to accommodate Smith both (1) furthers "a compelling governmental interest," and (2) is the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). Dr. Li argues that, as Judge Todd Campbell of this court held in an earlier case, the government has "a compelling interest in assessing the effects of the lethal injection protocol." *Workman v. Levy*, No. 3:01-0296, 2007 WL 1521000, at *4 (M.D. Tenn. May 15, 2007). And it is difficult to dispute that, if the state is going to perform executions, it has what is, at the very least, a significant general interest in assessing the efficacy and potential secondary effects of the mechanisms it uses.[3] "Under RLUIPA,"

---

[2] The Sixth Circuit vacated the preliminary injunction order not on the merits, but on equitable grounds, finding that the parties had settled following entry of the preliminary injunction and that the defendant's decision to settle was not in response "to the litigation itself in an effort to evade an adverse judgment" but, instead, "in response to the extraordinary circumstances presented in a death penalty proceeding." *McIntyre*, 2007 WL 7007938, at *2.

[3] It must be noted that Judge Campbell's ruling was made fifteen years ago, when lethal injection was a much newer method of execution than it is now.

however, "the government cannot discharge [its] burden by pointing to 'broadly formulated interests'" that do little more than restate the rationale for the general policy to which the government is refusing to make an exception. *Ramirez*, 152 S. Ct. at 1278 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014)). Instead, the government must "demonstrate that the compelling interest test is satisfied through application of the challenged law [to] the particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* (quoting *Holt*, 574 U.S. at 363). A compelling interest in investigating the effects of Tennessee's death penalty methods is not the same thing as a compelling interest in taking *Smith's* particular fluids over his earnest religious objection.

Even if the court accepts Dr. Li's description of the government's interest, the breadth of that formulation merely highlights the degree to which requiring a collection of Smith's fluids is not the least restrictive tool available. Since 2018, Tennessee has executed seven prisoners,[4] five of whom were executed under the same lethal injection protocol still in effect today. Dr. Li has presented no evidence that Tennessee was deprived of the opportunity to collect fluids from those prisoners or to perform autopsies on four of the five.[5] Tennessee, moreover, is far from the only state that performs lethal injection executions that likely provide numerous other opportunities for information-gathering as well. *See Alley*, 2006 WL 1804605, at *2 ("Putting aside whether that interest is a compelling one, . . . performing an autopsy on Mr. Alley cannot be the least restrictive

---

[4]    *See*    https://www.tn.gov/correction/statistics-and-information/executions/tennessee-executions.html (last visited April 18, 2022).

[5] Two chose electrocution. *See* https://www.tn.gov/correction/statistics-and-information/executions/death-penalty-in-tennessee.html (last visited April 18, 2022). And one apparently successfully sought a temporary restraining order to enjoin the post-mortem autopsy but not the collection of fluids. (*See* Doc. Nos. 13-3, 16-2.)

means of furthering that interest because autopsies following executions in other states that follow the same protocol should be available to the state.").

Indeed, even Smith's own execution will come with a wealth of information that undermines the contention that collecting his fluids will be necessary to avoid the government's being left in the dark. That execution will be contemporaneously observed by individuals including state personnel who, at least according to the state's lethal injection protocol, will have been extensively trained ahead of time. Those observers will be able to provide accounts of how the process went, including how Smith visibly reacted to the drugs. (*See* Doc. No. 18-1 at 32, 64.) Their observations can also be considered in the context of the close monitoring of Smith that will have occurred in the leadup to his execution—monitoring far more extensive than most individuals receive in the days prior to their deaths—which should provide the state with information about what Smith ate, drank, and did that might have affected his physical state before the drugs were administered. (*See id.* at 16.) Finally, as Smith points out, the lethal injection protocol dictates the collection of relevant data regarding the drugs used, which would provide additional information to consider as well. (*See* Doc. No. 18-1 at 35–36.) Collecting fluids would provide more information, but so would a full autopsy, which Li concedes can be avoided. There is little reason for concluding that the specific quantum of additional information available from fluid samples *is* justified by a compelling interest, while the information available from an autopsy would not be.

Moreover, any argument that there is a compelling need to collect samples from every single executed prisoner is belied by the fact that Tennessee's statute merely authorizes, but does not mandate, that an autopsy be performed—and says nothing at all specifically about collecting fluids. *See Johnson v. Levy*, No. M2009-02596-COA-R3-CV, 2010 WL 119288, at *8 (Tenn. Ct. App. Jan. 14, 2010) ("[T]he statute permits, but does not require, an autopsy in the case of executed

inmates."). Under these circumstances, where the decision whether to conduct an autopsy is left to the discretion of the county medical examiner and, alternatively, to that of the state chief medical examiner or the district attorney general, it is difficult to see how the government could show that conducting an autopsy is necessary to fulfill a compelling government interest. If the interest were truly compelling, the statute presumably would mandate it.[6]

For the foregoing reasons, the court concludes that Smith is likely to prevail on his claim that Dr. Li's stated intention to withdraw bodily fluids is inconsistent with Smith's rights under RLUIPA.[7] The other factors for considering whether to grant injunctive relief similarly support his argument. There should be little doubt that the violation of an individual's sincere religious beliefs in the handling of his corpse would inflict an irreparable, irrevocable harm. Other cases considering similar issues support such a holding. For example, in *Ramirez v. Collier*, in the context of a state's denial of a condemned prisoner's desire to have a minister lay hands on him and pray aloud during his execution, the Supreme Court concluded that the plaintiff was "likely to suffer irreparable harm in the absence of injunctive relief because he will be unable to engage in protected religious exercise in the final moments of his life" and that compensation paid to his estate would not remedy this spiritual harm. *Id.* In addition, the Court noted that his request for a "tailored injunction," rather than an "open-ended stay of execution," was "the proper form of equitable relief when a prisoner raises a RLUIPA claim in the execution context." *Id.* Because it was "possible to accommodate [his] sincere religious beliefs without delaying or impeding his

---

[6] The statute in question, part of Tennessee's Post-Mortem Examination Act, was amended in 2008 to authorize the county medical examiner to perform or order the autopsy of executed prisoners. *See* 2008 Pub. Acts, c. 969, § 12, eff. July 1, 2008.

[7] The court therefore will not assess the separate likelihood of Smith's success under the First Amendment or TRFRA.

execution," the Supreme Court found that "the balance of equities and the public interest favor[ed] his requested relief." *Id.*

Performing an autopsy and the drawing of bodily fluids post-mortem, by its nature, is similarly likely to cause irreparable harm, forcing Smith to face death knowing that he has failed to prevent what he considers to be the defilement of his body in direct contradiction of an edict that he believes comes from God. Moreover, because his request for a preliminary injunction will not impede the state's "important interest in the timely enforcement of [his] sentence," *id.* at 1282, and it is possible to carry out his execution while accommodating his request that his body not be subjected to an autopsy or the extraction of bodily fluids, the balance of equities and the public interest weigh in favor of Smith's requested relief. The court accordingly will grant his request for a preliminary injunction.

## III.  CONCLUSION

For the foregoing reasons, Smith's Motion for Preliminary Injunction (Doc. No. 12) is hereby **GRANTED**. Dr. Feng Li, his officers, agents, employees, servants, and all persons in active concert or participation with him are hereby **ENJOINED** from performing an autopsy on Smith, collecting fluids from his body postmortem, or performing any other procedure violating the physical integrity of his body after his death. Dr. Li shall not be prevented from performing a visual examination of the body, taking photographs of the body, or performing non-invasive radiographs of the body to the extent permitted by Tennessee law.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge